SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

Morris J. REITER d/b/a M. J. Reiter Co.,
and Morris J. Reiter, individually,
Defendants.

United States District Court
S. D. New York.

Nov. 5, 1956.

Supplemental Opinion Nov. 26, 1956.

---◆---

Paul Windels, Jr., Atty., New York City, for Regional Admr.

John J. Devaney, Jr., Chief Enforcement Atty., William D. Moran, Asst. Regional Admr., Charles E. Greaney, New York City, for plaintiff.

Julian Jawitz, New York City, for defendants.

EDELSTEIN, District Judge.

The Securities and Exchange Commission has brought an action against defendant, a registered broker-dealer in securities, to enjoin him from engaging in practices alleged to constitute violations of Sections 15(c)(1) and 15(c)(3) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. 78o(c) (1) and 78 o(c) (3), 15 U.S.C.A. § 78o(c) (1, 3), and also of Rules X–15C1–2 and X–15C3–1 adopted thereunder. The present application is for a preliminary injunction.

The complaint charges that the defendant sold securities upon a representation that he was the underwriter and that the "monies and securities will be paid promptly to the issuer of such securities when in fact the defendant has not paid such monies and securities to the issuer and is not now in a position

to make such payment." Defendant is further charged with omitting to state the facts relating to the underwriting which are material and necessary "in the light of the circumstances under which it has been made and is being made," in order to render the representations made not misleading. Both the untrue representations and the omissions to state facts specified are alleged to have related to material facts and to have been accompanied by defendant's "knowledge that the statement made is untrue." Finally, the defendant is charged with permitting its aggregate indebtedness to all other persons to exceed 2,000% of its net capital in contravention of Rule X–15C3–1.

The preliminary injunction sought would restrain defendant (1) from selling securities while its liabilities exceed its assets or it is unable to meet its current liabilities; (2) from selling securities by means of any untrue statement of the material facts or any omission to state a material fact which statement is made or omitted to be made with knowledge or reasonable grounds to believe the statement or omission to be untrue or misleading, concerning the defendant's financial condition; and (3) from selling securities at a time when its aggregate indebtedness to all other persons exceeds 2,000% of its net capital.

The issuance of an injunction under the Securities Exchange Act is governed by section 21(e), 15 U.S.C. § 78u(e), 15 U.S.C.A. § 78u(e), which conditions the right upon sufficient proof that "any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation" of the statute or of any rule or regulation prescribed under its authority. The showing made by the Commission consists of an affidavit of one of its securities investigators who conducted an inspection of the books and records of the defendant, on September 12, 1956. Facts are set forth to indicate that the defendant had a deficiency of capital required in order not to exceed the 2,000% limitation on its aggregate indebtedness to its adjusted net capital.

The examination of the books and records disclosed to the investigator that of the defendant's $125,000 in liquid or current assets, $105,000 consisted of, in the main, speculative penny stocks characterized as securities of "questionable value". And finally, the investigator set forth that the defendant was acting as an underwriter on a "best efforts" deal to sell an issue of stock at 20 cents a share, with an underwriting discount of 4 cents to the defendant. The defendant had sold to the public 363,000 shares for which customers have paid the purchase price, but had not paid the issuing corporation some $58,000, and, having only about $2,780 in the bank, was, it is alleged, unable to pay the corporation for whom it had sold securities.

In opposing the issuance of a preliminary injunction, the defendant, while raising an issue of law on the validity of the aggregate indebtedness rule, contends that at most he was guilty of a technical violation of a highly technical rule which requires the continued application of mathematical calculations and accounting calculations to determine whether there is compliance at any particular time. He asserts, furthermore, that he was never given an opportunity to correct the alleged illegality before suit, and that he did correct it as soon as suit was commenced. The charge that he sold securities while his liabilities exceeded his assets or while he was unable to meet his current liabilities is denied. Defendant states without contradiction that at the time the investigator's affidavit was sworn to and the complaint signed he had already paid $29,690 of the sum owing to the stock issuing corporation; that within two business days after service of the papers on him he paid an additional $14,640, and within three business days thereafter paid an additional $14,124. Moreover, he assigns as the reason for any delay in paying for the stock the fact that the appointment of a transfer agent by the issuing corporation was delayed. A letter from the corporation, dated the same day as the investigator's examination of

the books, advised the defendant of the appointment of a transfer agent. It is admitted that the cash from the sales of the securities was not segregated or earmarked, but it has not been suggested that there is any rule requiring such a procedure. Defendant also vigorously disputes the characterization of $103,000 of his assets as of "questionable value" and indicates that he has in fact sold off approximately 50% to 60% of these stocks, realizing the values set forth in his books and records.

██ The papers before me disclose a number of seriously disputed questions of fact and the plaintiff has made a showing inadequate to sustain the drastic action of the issuance of the preliminary injunction it seeks. It is impossible, on the showing made, to justify a finding that the defendant has sold securities while his liabilities exceeded his assets or while he was unable to meet his current liabilities, or that he is about to perform such acts. There has been no showing whatever to indicate that the defendant was or is about to engage in selling securities by means of making untrue statements of material fact concerning his financial condition, or by means of omitting to state a material fact. Assuming *arguendo* the legal validity of the challenged rule, it may be taken as established that the defendant was at least in technical violation, although there are no facts or circumstances set forth to indicate that the violation was wilful. The necessity for injunctive relief is predicated upon an assertion in the investigator's affidavit that the defendant will continue his violations unless restrained by the court, "[i]n view of [his] failure to take the necessary steps to rectify the * * * situation." But it certainly is not made to appear that the defendant has taken no steps; it appears, in fact, that the defendant was given no opportunity to do so. The alleged violation was never called to his attention before the service of papers in the case. He was away on business on the west coast at the time the papers were received and, promptly upon his return to New York, he remedied the violation, an assertion that is uncontradicted. Of course, even after the discontinuance of illegal conduct, the court's power to grant injunctive relief survives, but the moving party must satisfy the court that relief is needed. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303. The statement alluded to concerning the necessity for injunction fails to provide the requisite satisfaction. On the contrary, the facts thus far set before the court seem to negative the likelihood of the resumption of the violation.

The motion for a preliminary injunction will be denied.

### Supplemental Opinion.

After the issuance of the memorandum opinion, on Nov. 5, 1956, denying the Securities and Exchange Commission's motion for a preliminary injunction, representatives of the Commission requested a conference with the court, which was held, with the attorney for the defendant also in attendance. It was not contended that the opinion erred in matters of law, and indeed it was conceded that an adequate showing in support of the application for injunctive relief was not made. But the Commission representatives called to the court's attention certain portions of the opinion which they feared might be subject to misconstruction, to the prejudice of enforcement procedures, and they sought a clarification.

██ It was pointed out that the court referred to the aggregate indebtedness rule, Rule X–15C3–1, as a highly technical rule and that the court indicated that the defendant was in technical violation of it. There was, of course, no intent to minimize the substantive importance of the rule nor to minimize the seriousness of any violation. The court was addressing itself to the necessity for injunctive relief in a situation where, as it appeared from the papers before it, the defendant was no longer in violation. Relevant to that necessity is the character of past violations. United States v.

W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303. The rule in issue is admittedly one expressed in technical terms, and the violation charged was not made to appear as willful or deliberate; for all that did appear, in view of the defendant's affidavit, the violation might have been the result of mistake, carelessness or oversight. In any event, it could not be found as a fact, at that time and in view of the showing made, that the defendant had committed such a violation as to demonstrate a likelihood of recurrence. In so far as the rule is concerned, there is no suggestion that it is anything but necessary and appropriate to the public interest. And in so far as a violation of that rule is concerned, there is no suggestion that it is not a serious matter. The Securities and Exchange Commission is an expert body entrusted with these concerns in the public interest, and certainly this court could not, and would not if it could, usurp the domain in the competence of the Commission.

It was also submitted to the court that the opinion makes a point of the fact that the alleged violation was never called to the attention of the defendant before the service of papers in this case upon him. Let it be stated that there was no suggestion or holding that the commission is under a duty to inform a broker-dealer of the condition of his books and records, nor was there a suggestion or holding that there is any formal pre-requisite to the initiation of proceedings for a violation of the rule that the Commission notify the broker-dealer of deficiencies and give him an opportunity to rectify them before the commencement of proceedings. Again, the court was referring only to the necessity for injunctive relief in a situation where it appeared that the defendant was no longer in violation. And the reason given for such necessity was that the defendant would continue his violations unless restrained by the court, "[i]n view of [his] failure to take the necessary steps to rectify the situation." Thus, it was the Commission who posed the issue of a failure to rectify, which can have meaning only if an apportunity to rectify is given after notice. Perhaps other valid justification for injunctive relief in this situation could have been supplied, notwithstanding the absence of notice to the defendant, but it was not supplied, and the court had nothing else to go on.

An application for a preliminary injunction involves the necessity for the finding of facts by the court. The original memorandum opinion in this case was based upon such factual material as was supplied to the court in the form of affidavits. On the basis of that data, the court could not make the findings necessary to support the issuance of a preliminary injunction. The discussion was confined to an evaluation of the showing made to the court and contains no rulings touching either the final hearing on the case or the regulatory procedures of the Commission.